# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Plaintiff, | CASE NO. 8:08-cv-489 |
| and | Judge Warren K. Urbom |
| | Magistrate Judge Cheryl R. Zwart |
| JAMES BROWN and JEFFREY DAUBMEN, | **CONSENT ORDER** |
|     Plaintiffs/Intervenors. | |
| v. | |
| THE LATVIAN TOWER CONDOMINIUM ASSOCIATION, INC., and KARL TEGTMEYER, | |
|     Defendant. | |

## I. Factual and Procedural Background

The United States initiated this action on October 29, 2008, against The Latvian Tower Condominium Association, Inc. ("LTCA") and its president, Karl Tegtmeyer. In its complaint, the United States alleges that Defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act of 1988, 42 U.S.C. §§ 3601 et seq. ("the Act" or "the FHA"), on the basis of familial status with respect to the sale of Unit 722 the Latvian Tower Condominiums in Omaha, Nebraska.

The United States alleges that the Defendants violated the FHA by adopting and enforcing a Master Deed and By-Laws that prohibited children under the age of sixteen (16) from occupying or residing in a condominium unit in Latvian Towers. The United States further alleges that the conduct of Defendants constitutes a refusal to allow the

sale of or negotiations for the sale of, or otherwise making unavailable, a dwelling because of familial status, in violation of 42 U.S.C. § 3604(a); the making, printing, or publishing of statements with respect to the sale of a dwelling that indicate a preference, limitation, or discrimination based on familial status, in violation of 42 U.S.C. § 3604(c); and representation that, because of familial status, a dwelling is not available for inspection or sale when such dwelling is in fact so available, in violation of 42 U.S.C. § 3604(d). The United States further alleges that Defendants' conduct as described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the Act, and a denial to a group of persons of rights granted by the Act, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

The Defendants deny the allegations of the United States and deny that they have violated the FHA in any manner. It enters into this Consent Order to avoid the costs of protracted litigation and nothing herein is or should be construed as an admission of liability.

The parties desire to avoid costly and protracted litigation and agree that the claims against Defendants should be settled and resolved without the necessity of a trial. The parties have agreed to the entry of this Consent Order, as indicated by the signatures below.

Therefore, it is **ORDERED, ADJUDGED and DECREED** as follows:

## II. Injunction

1. Defendants, their agents, employees, successors, and all persons in active concert or participation with them are hereby enjoined, with respect to the sale or rental of dwellings, from:

    a. Refusing to allow the sale or rental of, or the negotiating for the sale or rental of, or otherwise making unavailable or denying, a dwelling to any person because of familial status;

    b. Making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination; or

    c. Representing that, because of familial status, a dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

## III.  Nondiscrimination Policy and Master Deed

2. Defendants' responsibilities under this Consent Order shall apply to each and every dwelling unit in which any Defendant has an ownership, management, or other financial interest, and to any and all dwelling units governed, controlled, or regulated in any way by Defendants.  Dwelling units subject to this Order are hereinafter referred to as "covered dwelling units," a current list of which is attached as Exhibit A.  Defendants' signatures to this Order serve as a certification of the completeness and accuracy of this list.

3. Defendant LTCA shall prepare and implement a uniform, non-discriminatory Policies regarding the rental or sale of covered dwelling units that shall be applied equally to all applicants or prospective purchasers, actual and prospective, regardless of their familial status (having children under 18). An acceptable example of a non-discriminatory policy is attached as Exhibit B. Defendant LTCA shall amend its Master Deed to remove Paragraph 19(l).

### IV.  Notice to Public of Nondiscrimination Policies

4. Within thirty (30) days after the date of entry of this Consent Order, Defendants shall prominently post in all common areas of the Latvian Tower Condominium a fair housing sign no smaller than ten (10) inches by fourteen (14) inches indicating that Defendants operate and manage the property on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

### V.  Mandatory Training

5. Within thirty (30) days of the entry of this Consent Order, Defendant LTCA shall provide a copy of this Order and Nondiscrimination Policy and Master Deed to its officers and secure the signed statement from each officer acknowledging that he or she has received and read the Order and the Nondiscrimination Policy and Master Deed and has had the opportunity to have questions answered about the Order and Nondiscrimination Policy and Master Deed and agrees to abide by the relevant provisions of the Order and said policies and procedures. This statement shall be in the form of Exhibit C.

6. Within one hundred eighty (180) days from the date of entry of this Order, Karl Tegtmeyer and the officers of the LTCA shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of familial status. The training shall be conducted by an independent, qualified third party, approved in advance by the United States, and any expenses associated with this training shall be borne by Defendants. Defendants shall obtain from the trainer certifications of attendance, executed by each individual who received the training, confirming their attendance, in a form acceptable to the United States. This confirmation shall include the name of the course, the date the course was taken, and the length of the course and/or time within which the course was completed.

7. During the term of this Order, within five (5) days after the appointment of each officer of the board of the LTCA, Defendants shall provide a copy of this Order and the Nondiscrimination Policy and Master Deed to said officer and secure the signed statement from each officer acknowledging that he or she has received and read the Order, had the opportunity to have questions about the Order answered, and that he or she has also received and read the Nondiscrimination Policy and Master Deed, and agrees to abide by said policies and the relevant provisions of the Order. This statement shall be in the form of Exhibit C.

## VI. Reporting Requirements

8. Within ninety (90) days of the date of entry of this Consent Order and every six (6) months thereafter for the duration of this Order, Defendant LTCA shall deliver

5

to counsel for the United States[1] a report containing information about Defendants' compliance efforts during the preceding reporting period, including but not limited to:

a. Copies of all mandatory education acknowledgements signed by Defendant LTCA and its officers, pursuant to Section IV of this Order; and

b. Copies of lists setting forth the occupancy of each covered dwelling unit by address and apartment number, including the name and familial status of each resident in that dwelling unit during the reporting period.

9. During the period in which this Order is in effect, Defendants shall notify counsel for the United States in writing within fifteen (15) days of receipt of any written or oral complaint against Defendants or Defendants' officers regarding familial status discrimination in housing. If the complaint is written, Defendants shall provide a copy of it with the notification. The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number. Defendants shall also promptly provide the United States all information it may request concerning any such complaint and shall inform the United States within fifteen (15) days of any resolution of such complaint.

### VII.  Compensation

10. No later than March 4, 2010, Defendants shall pay the total sum of thirty-five thousand dollars ($35,000.00), for the purpose of compensating the allegedly

---

[1] All documents or other communications required by this Order to be sent to counsel for the United States shall be addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, DJ 175-70-147, United States Department of Justice, 950 Pennsylvania Avenue N.W. – G St., Washington, D.C. 20530, or as otherwise directed by the United States. If the Consent Order requires transmission by facsimile, the communication shall also be sent via facsimile to (202) 514-1116.

aggrieved persons listed in Exhibit D, in the manner and amount listed in Exhibit D.

11. No later than March 4, 2010, Defendants shall pay the total sum of seventy-seven thousand, five hundred dollars ($77,500.00), for the purpose of compensating Plaintiff Intervenors James Brown and Jeffrey Daubman, by check made payable to the Doug Ruge Trust Account, and delivered to Douglas W. Ruge, 14769 California Street, Omaha, NE  68154.  No amounts shall be paid pursuant to this paragraph before Complainants James Brown and Jeffrey Daubman have each executed a written release of all claims, legal or equitable, that they might have against Defendants relating to the claims asserted in this lawsuit.  A copy of the Release and Settlement is attached as Exhibit E.

12. In no event shall the aggregate of all checks to the complainants and aggrieved persons exceed the sum of one hundred twelve thousand, five hundred dollars ($112,500.00), plus accrued interest.

13. When counsel for the United States has received a check from Defendants payable to a complainant or aggrieved person and a signed release in the form of Exhibit E from the complainant or aggrieved person, counsel for the United States shall deliver the check to the complainant or aggrieved person and the original, signed release to counsel for Defendants.  No complainant or aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Exhibit E.

### VIII. Civil Penalty

14. No later than March 4, 2010, after the entry of this Consent Order, the Defendants shall pay a total of fifteen thousand dollars ($15,000.00) to the United States as a civil penalty, pursuant to 42 U.S.C. § 3614(d)(1)(C). This payment shall be delivered to counsel for the United States in the form of a cashier's check payable to the "United States Treasury."

### IX. Scope and Duration of Consent Order

15. The provisions of this Consent Order shall apply to all Defendants, their employees, agents, successors, and all persons acting in active concert or participation with them.

16. This Consent Order is effective immediately upon its entry by the Court and shall remain in effect for three (3) years.

17. The Court shall retain jurisdiction for the duration of this Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

18. All parties shall be responsible for their own attorney's fees and court costs, except as provided for in Section IX below.

### X. Remedies for Non-Compliance, Time for Performance, and Modification

19. The United States may move the Court to extend the period in which this Order is in effect if Defendants violate one or more terms of the Order or if the interests of justice otherwise require an extension of the terms of the Order.

20. Any time limits for performance imposed by this Order may be extended by mutual written agreement of the parties.

21. The parties to this Order shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by any Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Order or otherwise to comply with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and attorney's fees which may have been occasioned by the Defendant's or Defendants' violation or failure to perform.

22. The parties that in the event that any Defendant engages in any future violation of the Fair Housing Act on the basis of familial status, such violation shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d).

**IT IS SO ORDERED:**

This 3rd day of March, 2010.

                s/ Warren K. Urbom

                _____
                UNITED STATES SENIOR DISTRICT JUDGE

By their signatures below, the parties consent to the entry of this Consent Order.

**For the United States:**

| | |
|---|---|
| DEBORAH R. GILG<br>United States Attorney | ERIC H. HOLDER, JR.<br>Attorney General |
| | THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSEMBAUM<br>Chief<br>REBECCA B. BOND<br>Deputy Chief<br>Housing and Civil Enforcement Section<br>Civil Rights Division |
| /s/ Laurie A. Kelly | /s/ Robin L. Dull |
| LAURIE A. KELLY<br>Assistant United States Attorney<br>District of Nebraska<br>1620 Dodge St, Ste 1400<br>Omaha, NE  68102-1506<br>Phone: 402-661-3700<br>Fax:  402-661-3081<br>Email: Laurie.Kelly@usdoj.gov | ROBIN L. DULL<br>Trial Attorney Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave, NW<br>Northwestern Bldg, 7th Floor<br>Washington, DC  20530<br>Phone:  202-514-3556<br>Fax:  202-514-1116<br>Email:  Robin.Dull@usdoj.gov |

**For James Brown and Jeffrey Daubman:**

DOUGLAS W. RUGE
14769 California Street
Omaha, NE  68154
Phone: 402-964-4617
Fax: 402-964-4994
E-mail:  ruge@radiks.net

**For Defendants:**

JAMES B. MCVAY
Tiedeman Lynch Kampfe & McVay
6910 Pacific Street
Omaha, NE  68106
Phone: 402-397-8900
Email:  jmcvay@omahalaw.com


SCOTT P. MOORE
Baird Holm LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, NE  68102-2068
Phone: 402-636-8268
Fax: 402-344-0588
Email: spmoore@bairdholm.com

Exhibit A

**<u>LIST OF COVERED DWELLING UNITS</u>**

<u>Address</u>

3003 Paddlock Plaza, Omaha, Nebraska

Exhibit B

**<u>NONDISCRIMINATION POLICY</u>**

It is the policy of the Latvian Tower Condominium Association to comply with the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 <u>et seq</u>., by ensuring that apartments are available to all persons without regard to familial status.  "Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with a parent or another person having legal custody of such individual or individuals, or the designee of such parent or other person having such custody, with the written permission of such parent or other person.  This policy means that, among other things, the Latvian Tower Condominium Association and all its officers and employees must not discriminate in any aspect of the sale of dwellings against prospective buyers because of familial status.  Such officers and employees may not:

a.  Refuse to allow the sale or rental after the making of a bona fide offer, or refuse to allow the negotiation for sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of familial status;

b.  Make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination; or

c.  Represent that, because of familial status, a dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

Any agent or employee who fails to comply with this non-discrimination policy will be subject to appropriate disciplinary action, which may include termination.  Any action taken by an agent or employee that results in the unequal service, treatment or behavior to residents on the basis of familial status may constitute a violation of state and federal fair housing laws.

13

Exhibit C

**<u>Officer Acknowledgment of Receiving and Reviewing Order and Nondiscrimination Policy and Master Deed</u>**

I have received a copy of the Consent Order entered in <u>United States v. The Latvian Tower Condominium Association, Inc., et al</u>, Civil Action No. 8:08-cv-489 (D. Neb.).  I have also received a copy of the Latvian Tower Condominium Association's Nondiscrimination Policy and Master Deed.  The Consent Order and the Nondiscrimination Policy and Master Deed were explained to me by the Latvian Tower Condominium Association, and all questions concerning these documents were answered.  I have read and understood the Consent Order and the Nondiscrimination Policy and Master Deed.

_____
DATE

_____
OFFICER NAME (PRINT)

_____
OFFICER SIGNATURE

Exhibit D

## PAYMENT SCHEDULE

Pursuant to Paragraph 10 of the Consent Decree, no later than March 4, 2010, Defendants shall deposit thirty-five thousand dollars ($35,000.00) in an escrow account administered by the law firm Tiedeman Lynch Kampfe & McVay.  This amount is for the purpose of compensating the complainants and allegedly aggrieved persons[2] and shall be distributed in the following manner.  Within seven (7) business days of receipt of the funds, the law firm Tiedeman Lynch Kampfe & McVay shall send to counsel for the United States, via overnight delivery,[3] checks made payable to the following persons in the amounts indicated:[4]

| | |
|---|---|
| Dan and Susan Wooldridge | $8,000.00 |
| Aleta Schliech | $8,000.00 |
| Robert and Carolyn Daisley | $8,000.00 |
| Linda Andersen | $4,000.00 |
| Duane Sullivan | $4,000.00 |
| Ken Coats | $1,500.00 |
| Joanne Amoura | $1,500.00 |

---

[2] For the purposes of settlement of this lawsuit, the United States has identified no persons other than those identified in this Exhibit D who shall receive compensation pursuant to Paragraph 10 of the Consent Decree.

[3] The checks should be sent by overnight delivery to the following address:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, 1800 G Street, N.W. Suite 7002, Washington, DC 20006, Attn: DJ# 175-45-56.

[4] Pursuant to Paragraph 12 of the Consent Decree, the United States shall not distribute a check to a complainant or an allegedly aggrieved person until the United States is in the possession of a signed release from that person.

Exhibit E

## **RELEASE**

In consideration for the parties' agreement to the terms of the Consent Order entered in <u>United States v. The Latvian Tower Condominium Association, Inc., et al.</u>, Civil Action No. 8:08-cv-489 (D. Neb.) (the "Lawsuit"), and Defendants' payment to me of $_____, I fully and forever release and discharge The Latvian Tower Condominium Association, Inc., and Karl Tegtmeyer and all related entities, parents, predecessors, successors, subsidiaries and affiliates, and all of their past and present directors, officers, agents, managers, supervisors, and employees and their heirs, executors, administrators, successors or assigns, from any and all claims, demands, causes of action, and liabilities that exist as of the date I sign this Release, including, but not limited to any and all claims, demands, causes of action, and liabilities arising out of or in any way connected with my attempt to purchase a unit at Latvian Tower Condominiums or other connection with The Latvian Tower Condominium Association, Inc., and Karl Tegtmeyer, whether presently asserted or unasserted, known or unknown, for acts or omissions of The Latvian Tower Condominium Association, Inc., and Karl Tegtmeyer prior to the date this Release is executed, and specifically including, but not limited to, claims, demands, causes of action, or liabilities alleging violations of his right to use and enjoy Latvian Tower Condominiums, including all claims for attorney fees, liquidated or punitive damages and costs in connection with any such claim, as alleged in the Complaints filed in the Lawsuit by the United States and James Brown and Jeffrey Daubmen. I intend by this release to eliminate completely and permanently all claims of every nature whatsoever against The Latvian Tower Condominium Association, Inc., and Karl Tegtmeyer for acts or omissions prior to the date of this Agreement and this release shall be broadly construed to that end.

Executed this \_\_\_ day of _____, 2010.

_____
[Printed Name]

_____
[Signature]